**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

SUZANNE MANDY,                                      CASE NO.: 2:26-CV-00823

      Plaintiff,

v.

NCH HEALTHCARE SYSTEM, INC.,
and FROST-ARNETT COMPANY

      Defendants.

_____/

## COMPLAINT & JURY DEMAND

COMES NOW Plaintiff, Suzanne Mandy, (hereinafter "Plaintiff"), by and through the undersigned counsel, who brings this action against Defendant, NCH Healthcare System, Inc. (hereinafter "NCH"), and Defendant, Frost-Arnett Company (hereinafter "Frost-Arnett"), in order to remedy illegal debt collection activities, and states as follows in support thereof:

## PRELIMINARY STATEMENT

1.      This is an action brought by Plaintiff against Frost-Arnett, for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* (hereinafter the "FDCPA") and brought against Defendant, NCH, for violations of the Florida Consumer Collection Practices Act, Section 559.55, *et seq.*, Florida Statutes (hereinafter the "FCCPA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d),the FCCPA, Section 559.77(1), Florida Statutes, and 28 U.S.C § 1331. This Court has supplemental jurisdiction for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

3.      Frost-Arnett is subject to the provisions of the FDCPA and to the jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4(k).

4.      NCH is subject to the provisions of the FCCPA and to the jurisdiction of this Court pursuant to Federal Rule of Civil Procedure 4(k).

5.      Venue is proper pursuant to 28 U.S.C. §1391(b)(2) and section 559.77, Florida Statutes, because the acts or omissions complained of were committed and/or caused by Defendants here and Plaintiff lives here.

## PARTIES

6.      Plaintiff is a natural person and resident of Lee County Florida, and a consumer as defined by 15 U.S.C. § 1692a(3) and section 559.55(8), Florida Statutes.

7.      Frost-Arnett is a Tennessee corporation with a primary business address of 1321 Murfreesboro Pike, Suite 611, Nashville, TN 37217 and whose registered agent for service of process is Corporation Service Company 1201 Hays Street, Tallahassee, FL 32301.

8.      Frost-Arnett is a debt collector within the meaning of 15 U.S.C. § 1692a(6), in that it uses postal mail, i.e. instrumentalities of interstate commerce, across state lines into Florida for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

9.      Frost-Arnett is licensed as a Consumer Collection Agency ("CCA") by the Florida Office of Financial Regulation, holding license number CCA0900428.

10.      NCH is a Florida non-profit corporation with a primary business address of 350 7th Street North, and whose registered agent for service of process is Matthew Heinle at NCH's business address.

11.      NCH is a person within the meaning of section 1.01, Florida Statutes, and therefore, NCH is also a person within the meaning of section 559.72, Florida Statutes.

## Applicable Statutes:

12.      Section 559.72(9), Florida Statutes, provides in pertinent part that:

In collecting consumer debts, a person may not …….. assert the existence of some other legal right when such person knows that the right does not exist.

13.      Section 440.13(3)(g), Florida Statutes, provides that:

The employee is not liable for payment for medical treatment or services provided pursuant to this section except as otherwise provided in this section.

14.     Section 440.13(13)(a), Florida Statutes, provides, in relevant part, that:

A health care provider may not collect or receive a fee from an injured employee within this state, except as otherwise provided by this chapter. Such providers have recourse against the employer or carrier for payment for services rendered in accordance with this chapter. Payment to health care providers or physicians shall be subject to the medical fee schedule and applicable practice parameters and protocols, regardless of whether the health care provider or claimant is asserting that the payment should be made.

15.     15 U.S.C. § 1692e provides that:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

16.     15 U.S.C. § 1692e(2) & (10) provides that:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The false representation of -- (A) the character, amount, or legal status of any debt . . . (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

## FACTUAL ALLEGATIONS

17.     On or about October 4, 2024, Naples Community Hospital, Inc. (hereinafter "Hospital") contracted with Plaintiff for the provision of personal medical services to Plaintiff resulting from a work injury sustained by Plaintiff and rendered said services in accordance with the contract. This was either an express or implied-in-fact contract. Ex. A.

18.     When Plaintiff went to NCH on the date at issue, she provided

workers' compensation insurance information when presenting.

19.      That NCH performs day to day administrative functions for Hospital, including matters related to initial patient intake, input of patient insurance information, along with billing or invoicing patients of Hospital for monies allegedly owed to Hospital, as well as hiring, retaining or otherwise engaging Frost-Arnett to collect monies alleged to be owed.

20.      NCH later claimed that Plaintiff incurred a debt of $1,920.06 for the medical services rendered (hereinafter referred to as the "Debt"). *Id.* The Debt consisted of two charges both of which were incurred on the same date. *Id.* One charge in the amount of $40.95 was associated with medical services rendered by Robert Malka, M.D. (hereinafter referred to as "Debt 1"), and the other charge, much larger charge, in the amount of $1,879.11 was associated with medical services rendered by Hospital (hereinafter referred to as "Debt 2"). *Id.*

21.      NCH sent Plaintiff a bill on or around January 5, 2025, demanding payment for Debt. Ex. A.

22.      NCH sent Plaintiff a bill on or around November 5, 2024, demanding payment for Debt 2. Ex. B.

23.      After receiving the bill, Plaintiff contacted NCH using the phone number listed on the bill and informed them: (1) that the medical care giving rise to Debt was incurred in connection with a workers' compensation claim, and (2)

that the workers' compensation carrier was liable for Debt not Plaintiff. Plaintiff also provided NCH with the name of the insurance carrier, the claim number associated with her workers' compensation claim, and the contact information for the insurance carrier.

24. Following that phone call, Plaintiff's Workers' Compensation attorney, acting at her direction, filed a Petition for Benefits seeking a determination of compensability of, and authorization for, the medical care rendered by North Naples Hospital outlined in the bill sent to Plaintiff by NCH. Ex. C.

25. Thereafter, NCH transferred Debt 2 to Frost-Arnett for collection.

26. Frost-Arnett, in turn, sent Plaintiff a bill in the mail on March 27, 2025, that falsely claimed that Plaintiff owed $1,879.11 in connection with Debt 2, that Plaintiff owed the debt to "Nch Healthcare System" and that Plaintiff was liable for the full balance of Debt 2. Ex. D.

27. Upon information and belief, the representation that Plaintiff owed the debt to "Nch Healthcare System" was not accurate in that Hospital is the alleged creditor for the Debt.

28. NCH sent Plaintiff a bill on or around April 6, 2025, demanding payment for Debt 1. Ex. E.

29. That in response to the March 27, 2025, collection letter from Frost-

Arnett, Plaintiff called Frost-Arnett to again convey that she is not obligated for the Debt in light of applicable workers' compensation insurance coverage. Frost-Arnett, however, indicated that it did not matter that the Debt was for medical care rendered in connection with a workers' compensation case, that Plaintiff needed to contact her workers' compensation attorney, and that Plaintiff needed to pay the balance due regardless of her claim that the Debt was for medical care rendered in connection with a workers' compensation case.

30.    Consequently, despite Plaintiff's efforts, Frost-Arnett contended Plaintiff owed the debt, so Plaintiff paid the Debt on or about April 9, 2025. Thereafter, Plaintiff's attorney filed a petition for benefits for reimbursement of the funds Plaintiff paid to Frost-Arnett in order to satisfy the Debt. Ex. "F".

31.    As a result, Plaintiff suffered actual damages in the form of a deprivation of funds because she was required to pay the Debt before a determination had been made that she was liable for the Debt. *Kottler v. Gulf Coast Collection Bureau, Inc.*, 460 F. Supp. 3d 1282, 1290 (S.D. Fla. 2020), *aff'd,* 847 Fed. Appx. 542 (11th Cir. 2021) ("Therefore, contrary to Defendant's assertion, when an account is subject to a Workers' compensation claim, an employee is not liable for payment unless and until a determination is made that the employee is liable."). Put differently, Plaintiff was induced by Frost-Arnett to pay the Debt early because Frost-Arnett did not have the right to collect the Debt unless and until a

determination was made that Plaintiff was liable for the Debt.

32. That on March 27, 2025, Plaintiff, who works in the financial industry, and who had an excellent credit score and history at the time she received the March 27, 2025 Frost-Arnett collection letter, was shocked because she had just recently advised NCH of the fact that the Debt was subject to an active workers' compensation claim and had provided all information necessary for NCH to bill Debt 2 to the applicable workers' compensation insurance company.

33. That prior receipt of the March 27, 2025 collection letter regarding Debt 2, Plaintiff was treating with a licensed mental health counselor on a regular basis and taking medication for anxiety.

34. As result of the illicit debt collection efforts described herein, Plaintiff experienced emotional distress and further aggravation of a pre-diagnosed anxiety condition, and suffered from loss of sleep, loss of concentration, and feeling defeated and hopeless. Moreover, Plaintiff had to waste a considerable amount of time trying to get the debt collection efforts of Defendants to stop because it required Plaintiff to have to send multiple emails containing evidence to her workers' compensation attorney, to have to make multiple phone calls to her workers' compensation attorney, to have to send multiple emails containing evidence to the attorney she employed to file the immediate action prior to filing, and to have to have multiple phone calls with the attorney she employed to file

the immediate action prior to filing. In addition, Plaintiff wasted time gathering, saving, and retrieving the offending communications outlined herein in order to use them in an action to get the debt collection activities to stop.

## COUNT I
### (Frost-Arnett Violations of 15 U.S.C. § 1692e(2) & (10))

35.     Plaintiff adopts and incorporates paragraphs (1) through (30) as if fully stated herein.

36.     On March 27, 2025, which was the date Frost-Arnett sent the collection letter at issue, Plaintiff had an active workers' compensation claim associated with State of Florida Office of Judges of Compensation Claims Case No.: 24-022770JAW, and as such, it was a violation of the FDCPA to attempt, let alone to ultimately collect same on March 27, 2025.  *Kottler v. Gulf Coast Collection Bureau, Inc.*, 460 F. Supp. 3d 1282, 1286 (S.D. Fla. 2020), *aff'd,* 847 Fed. Appx. 542 (11th Cir. 2021)

37.     Attempting to collect a debt for medical care subject to section 440.13, Florida Statutes, from an injured worker is a violation of the FDCPA. *See Crawford v. N. Am. Credit Services, Inc.*, No. 24-13931, 2025 WL 1805218, at *3 (11th Cir. July 1, 2025), *cert. denied sub nom. N. Am. Credit Services v. Crawford*, No. 25-377, 2025 WL 3198676 (U.S. Nov. 17, 2025).

38.     At all times relevant to this action, Frost-Arnett was subject to and must abide by the laws of United States, including without limitation, 15 U.S.C. §

1692, *et seq.*

39.    Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and "to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

40.    In enacting the statute, Congress sought to eliminate "deceptive[] and unfair debt collection practices" and identified the "invasion of individual privacy" as one of the harms against which the FDCPA is directed. *See* 15 U.S.C. § 1692(a).

41.    15 U.S.C. § 1692e(2) & (10) provides that: A debt collector may not use *any false, deceptive, or misleading representation* or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The false representation of -- (A) *the character, amount, or legal status of any debt*; . . . (10) The *use of any false representation or deceptive means to collect or attempt to collect any debt* or to obtain information concerning a consumer.

42.    Frost-Arnett violated 15 U.S.C. § 1692e(2) & (10) when it falsely communicated that Plaintiff owed Debt 2 and was personally liable for the same in its March 27, 2025 bill.

43.    Similarly, falsely misrepresenting who an original creditor is constitutes a violation of the FDCPA. *See Hepsen v. Resurgent Capital Services, LP,*

383 Fed. Appx. 877, 883 (11th Cir. 2010).

44.     Frost-Arnett violated 15 U.S.C. § 1692e's general prohibition and 15 U.S.C. § 1692e(10) when it falsely claimed that Debt 2 was owed to "Nch Healthcare System."

45.     Because the violation alleged herein resulted in Plaintiff being wrongfully deprived of funds, Congress's judgment along with the violation alleged indicates that violations of 15 U.S.C. § 1692e(2) & (10) constitute a concrete injury when the result of the misconduct is a wrongful deprivation of funds, and therefore, Plaintiff has standing to sue because a deprivation of funds is the "type of economic injury, which is the epitome of 'concrete.'" *MSPA Claims 1, LLC v. Tenet Florida, Inc.*, 918 F.3d 1312, 1318 (11th Cir. 2019); *accord Tallahassee Bail Fund v. Marshall*, 717 F. Supp. 3d 1201, 1210 (N.D. Fla. 2024) ("An economic injury like this is the epitome of 'concrete.'") ("As set out *supra*, Plaintiff has suffered a concrete injury because Defendant has withheld its funds.").

46.     As a result of Frost-Arnett's aforementioned violation of the FDCPA, Plaintiff suffered actual damages, including without limitation, damages flowing from emotional distress and the wrongful deprivation of funds.

47.     Frost-Arnett's conduct renders it liable for the above-stated violations of the FDCPA, and Plaintiff is therefore entitled to statutory damages not to exceed $1,000, actual damages, including for loss of use of funds, and all

other relief awardable under the FDCPA.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment against Frost-Arnett for the following:

a. Awarding statutory damages of $1,000.00 for NACS's violation of the FDCPA pursuant to 15 U.S.C. § 1692k, along with any actual damages sustained by Plaintiff;

b. Awarding reasonable costs and attorney's fees pursuant to pursuant to 15 U.S.C. § 1692k; and

c. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable as to her claim against Frost-Arnett

## ADDITIONAL FACTUAL ALLEGATIONS AS TO COUNT II

48.    The Plaintiff re-alleges paragraphs (1) through (30) as if fully restated herein and further states as follows:

49.    At all material times herein, Frost-Arnett was acting as an employee, representative, agent or apparent agent of NCH for the purpose of attempting to collect Debt 2.

50.    Even though NCH had actual knowledge that Debt 2 was subject to

an active workers' compensation claim it attempted to collect Debt 2 from Plaintiff by using its agent Frost-Arnett to send out the March 27, 2025 letter at issue.

51.     Because NCH had actual knowledge that Debt 2 was subject to an active workers' compensation claim, including by virtue of Plaintiff specifically telling this to NCH while at the same time providing the insurance carrier information, NCH can be held liable under the FCCPA for the conduct of its agent based on agency principles even if its agent lacked the requisite actual knowledge when they sent out the offending collection letter. *See Marchisio v. Carrington Mortgage Services, LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019).

52.     This is because, assuming arguendo that NCH is a principal and Frost-Arnett is NCH's agents, NCH can be charged with the conduct of its agents as it relates elements of an action brought under the FCCPA because the liability of a principle in the context of the FCCPA is a matter of Florida agency law. *See id.*; *Agrelo v. Affinity Mgmt. Services, LLC*, 841 F.3d 944, 953 (11th Cir. 2016).

53.     Thus, Plaintiff's cause of action against NCH is based on:

    a. direct liability for violating the FCCPA because NCH asserted the existence of a legal right which it had actual knowledge did not exist when it sent Debt 2 for collection to Frost-Arnett at a time when Plaintiff had an active pending workers' compensation claim which shielded her from any claim of liability at that time;

b.  vicarious liability - as it relates to the conduct constituting the actual attempt to collect Debt 2 from Plaintiff, i.e. the mailing and receipt of the March 27, 2025 collection letter from Frost-Arnett, as NCH is to be held vicariously liable for the conduct of its agent, Frost-Arnett.

54.     When attempting to collect Debt 2, Frost-Arnett was acting as an agent of NCH based on actual and/or apparent authority.

55.     The elements of an agency relationship based on actual authority are "1) acknowledgment by the principal that the agent will act for him or her, 2) the agent's acceptance of the undertaking, and 3) control by the principal over the actions of the agent." *Font v. Stanley Steemer Intern., Inc.*, 849 So. 2d 1214, 1216 (Fla. 5th DCA 2003). As to the third element, "[w]hether one party is a mere agent rather than an independent contractor as to the other party is to be determined by measuring the right to control and not by considering only the actual control exercised by the latter over the former." *Id.*

56.     NCH acknowledged that Frost-Arnett would act on its behalf with respect to the collection of and Debt 2 and that Frost-Arnett would act on its behalf with respect to the collection of Debt 2 by providing Frost-Arnett with Plaintiff's name, telephone number, email address, mailing address, the dates-of-service on which the medical care was rendered, the type of medical care rendered, and the

amount of the debt to be collected from Plaintiff directly.

57.    Frost-Arnett accepted the undertaking because it did, in fact, attempt to collect Debt 2 for NCH from Plaintiff using the information provided to it by NCH. Ex. D.

58.    NCH exhibited, and/or had the right to exhibit, control over Frost-Arnett by controlling what information Frost-Arnett had access to with respect to the debt(s) they were charged with collecting, including but not limited to, Plaintiff's name, telephone number, email address, mailing address, the dates-of-service on which the medical care was rendered, the type of medical care rendered, and the amount of the debt to be collected from Plaintiff directly.

59.    Moreover, NCH exhibited, and/or had the right to exhibit, control over Frost-Arnett by controlling what debts they could and could not collect on NCH's behalf, by controlling the ability to recall debts that were previously referred to Frost-Arnett, by controlling Frost-Arnett use of information provided to it by NCH for the purpose of collecting debts owed to NCH, by controlling how and when debts were collected on NCH's behalf by Frost-Arnett, and by controlling the method or means by which Frost-Arnett could collect debts on NCH's behalf.

60.    Based on the facts articulated in paragraphs (56) through (60), Frost-Arnett was acting as an agent of NCH based on actual authority when it was

collecting Debt 2 and therefore, NCH is charged with Frost-Arnett's conduct while acting within the scope of the agency relationship. *See Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1180 (11th Cir. 2025), *cert. denied*, No. 25-391, 2026 WL 80015 (U.S. Jan. 12, 2026) (imputing knowledge element of fraud claim based on agency principles)

61.     The elements of agency based on apparent authority are "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." *Luebbert v. Adventist Health Sys./Sunbelt, Inc.*, 311 So. 3d 334, 336 (Fla. 5th DCA 2021).

62.     NCH made a representation by providing Frost-Arnett with Plaintiff's personal and healthcare-related information including but not limited to Plaintiff's name, telephone number, email address, mailing address, the dates-of-service on which the medical care was rendered, the type of medical care rendered, and the amount of the debt to be collected from Plaintiff directly.

63.     Plaintiff relied on that representation and changed her position in reliance on that representation by employing an attorney to file the immediate action to address the debt collection efforts of Defendants and by consuming time and resources gathering and sending evidence of the debt collection activity to her attorneys and having phone calls with, and sending emails to, her attorneys for

the purpose of asserting a cause of action in order to address the debt illicit collection activities.

64.     Based on the facts articulated in paragraphs (63) through (64), Frost-Arnett acting as an agent of NCH based on apparent authority when it was collecting Debt 2 therefore, NCH is charged with Frost-Arnett's conduct while acting within the scope of the agency relationship. *Id.*

## COUNT II
### (Violations of Fla. Stat. § 559.72(9) - NCH)

65.     The Plaintiff re-alleges paragraphs (1) through (30) and (44) through (61) as if fully restated herein and further states as follows:

66.     At all times relevant to this action, NCH is, and was, subject to and must abide by the laws of Florida, including without limitation, Florida Statute § 559.72, *et seq.*

67.     The Florida Legislature, in enacting the FCCPA, has further defined and protected an individual's right of privacy in the State of Florida. *Collection Bureau of Orlando v. Continental Casualty Co.,* 342 So. 2d 1019, 1020 (Fla. 4th DCA 1977); *See also* Terri Jayne Salt, Note, *Fair Debt Collection Practices: Analysis of Florida and Federal Law,* 30 U. Fla. L. Rev. 892, 905 (1978).

68.     In collecting consumer debts, a person may not assert the existence of some other legal right when such person knows that the right does not exist. Fla. Stat. § 559.72(9) (2025).

69. "A plaintiff is not required to prove actual damages, but only a violation of one of the prohibited practices in the Florida Consumer Collections Practices Act." *Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509 (Fla. 1st DCA 2007).

70. NCH violated section 559.72(9), Florida Statutes, when it sent Debt 2 for collection to Frost-Arnett, as NCH asserted the right to seek payment from Plaintiff at a time when she was shielded from any claim of liability for Debt 2 in light of her then pending workers' compensation claim.

71. NCH violated section 559.72(9), Florida Statutes, when its agent, Frost-Arnett, sent the March 27, 2025 collection letter, as NCH asserted the right to seek payment from Plaintiff at a time when she was shielded from any claim of liability for Debt 2 in light of her then pending workers' compensation claim.

72. As a result of Frost-Arnett's aforementioned violation of the FDCPA, Plaintiff suffered actual damages, including without limitation, damages flowing from emotional distress and the wrongful deprivation of funds.

73. NCH's conduct renders it liable for the above-stated violations of the FCCPA, and Plaintiff is therefore entitled to statutory damages not to exceed $1,000 and actual damages, as well as any other relief awardable under the FCCPA.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter

judgment against NCH for the following:

d.  Awarding statutory damages of $1,000.00 for NCH's violation Florida Statutes section 559.72(9) of the FCCPA pursuant to Section 559.77(2), Florida Statutes;

e.  Awarding actual damages caused by NCH's violations of the FCCPA pursuant to Section 559.77(2), Florida Statutes;

f.  Injunctive relief preventing NCH from attempting to collect medical debt subject to section 440.13, Florida Statutes, from injured workers and from hiring third-parties to do the same.

g.  Awarding reasonable costs and attorney's fees pursuant to pursuant to section 559.77(2), Florida Statutes; and

h.  Such other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable as to her claim against NCH.

Respectfully submitted,
/s/ Richard K. Peck
Richard K. Peck, Esq. (FBN: 47105)
Peck Law Firm, P.A.
12515 Spring Hill Drive
Spring Hill, Florida 34609
(352) 835-7977
Attorney for Plaintiff
litigation@pecklawfirmfl.com
service@pecklawfirmfl.com

*Attorney for Plaintiff*